No. 20,118.

*In re* the Contempt of JOHN F. HANSON.

HEADNOTE BY THE REPORTER.

ATTORNEY-AT-LAW — *Contempt Proceedings — Contemptuous Conduct Shown—Suspension From Practice.* Where an attorney, in a document filed in this court, uses insulting and contemptuous language, disrespectful to the court and the individual justices thereof, and who willfully and maliciously persists in maintaining toward this court and the justices thereof "persistent insolence and effrontery," thereby showing contempt for this court and the justices thereof, and where in his answer in contempt proceedings against him he presents no reasonable explanation of or excuse for such contemptuous misconduct, he will be suspended from practice in all the courts of this state.

Original proceeding for contempt. Opinion filed November 11, 1916. Accused suspended from practice until the further order of this court.

*S. M. Brewster,* attorney-general, accuser.

*John F. Hanson,* of Lindsborg, *pro se.*

*Per Curiam:* The attorney-general having been directed by the court to take such steps as might be proper in the premises in the case of *The State of Kansas, ex rel, Agnes Bjorn v. Robert Creager,* filed, after due and proper preliminary proceedings, an accusation against John F. Hanson, setting forth, among other things, that the Creager case appealed from the district court of McPherson county was heard and determined in this court and an opinion, filed February 12, 1916, sustained the judgment of the lower court (*The State, ex rel., v. Creager,* 97 Kan. 334, 155 Pac. 29) ; that John F. Hanson was one of the attorneys for the plaintiff and appellant in that case, and as such filed his brief in this court, and after affirmance of the judgment there was filed in this court a petition for rehearing. prepared by Hanson as attorney for the appellant; that John F. Hanson is an attorney-at-law duly admitted to practice in the district courts and in the supreme court of this state, and as such is an officer of this court, and that while acting as such attorney in such petition for rehearing made various and divers attacks and reflections upon this court, and willfully used towards this court contemptuous and insulting language, found in various portions of the petition set forth in numerous paragraphs thereof.

The attorney-general alleged that this language was calculated to bring the court into disrepute and contempt and was willfully and purposely used by Hanson for the purpose of bringing the court into contempt; that his attention had been directed to the use of such language and his conduct towards this court and that he had been admonished in an opinion in *The State v. Linderholm,* 95 Kan. 669, 149 Pac. 427, wherein it was said, among other things: "But the writer finds in the pleadings, correspondence and documents of counsel a persistent insolence and effrontery towards this court and the individual justices which are wholly inexcusable and which must not be repeated. The very least that this court can do with such contumacious and insulting documents is to strike them from the files and consign them to the waste-basket." (p. 671) ; that notwithstanding this warning Hanson willfully and ma-

*In re* Hanson.

liciously persisted in maintaining towards this court and the individual justices thereof a "persistent insolence and effrontery" for the purpose of showing contempt of the court and its opinions.

In answer to this accusation respondent, after asserting that he appears specially and objects to and denies the jurisdiction of the court, and alleging that the accusation does not constitute contempt, pleads generally not guilty. Further answering he admits, among other things, that "he prepared and filed the said petition for rehearing referred to in said affidavit and accusation and that he did so intentionally with the exception of a few minor clerical errors which appear from the context and will be later herein referred to." He referred to the petition for rehearing and such parts of the record in the Creager case—

"As can possibly pertain to or throw any light on the said language used in said petition for rehearing; . . . But he specifically denies that he disregarded his duties and obligations while acting as such attorney, but on the contrary exerted his utmost efforts in behalf of his client's cause and further specifically denies that he intentionally made any improper, unlawful or unjustifiable attacks and reflections upon the said Supreme Court in said petition for rehearing, or that he intentionally used insulting language toward them, or any language towards the court or to the individual justices thereof which was not warranted by the circumstances; that he further specifically denies that he willfully and maliciously persists in maintaining toward this court or the individual members thereof a persistent insolence and effrontery, and he further specifically denies that he has done anything with the purpose and intent of showing contempt for this court, or the individual members thereof; and he further specifically denies that said language or any part thereof or any other language intended to be charged considered in the proper light and the surrounding circumstances constitutes contempt against this court or any member thereof, and alleges that any holding, rule or statute to the effect that it does constitute contempt under the circumstances would so restrict procedure and the right to be heard that it would not be due process of law and would be in contravention of section one of the fourteenth amendment of the federal constitution."

Another portion of his answer is as follows:

"The said John F. Hanson further answering alleges and says that the unusual and vehement language used in the said petition for rehearing is made necessary by what seems to be a persistent practice of the court of going to extremes adverse to him in their rulings and position in causes before them in which he is counsel or party, and in not

giving them as full and careful attention as they seem to merit, and for want of other adequate remedy he is compelled to make the most out of the opportunity in presenting matters to the courts in the hope that they might be awakened to a greater sense of their duty and attention in these matters."

After referring to numerous cases in which he complains of the action of this court the answer continues:

"That in view of this state of affairs the use of emphatic language such as set out in said affidavit should at least be excusable, as it is used with an honest purpose to get better and closer attention to the matters under consideration, and no disrespect is intended."

The answer closes thus:

"And further answering the said John F. Hanson says that the slang used in said language was not intended as any disrespect and though contending that it does not constitute contempt, he is willing to make due apologies therefor, and if the court will clearly point out in further opinion or otherwise show him that his position in this cause in any instance is so erroneous that any emphatic language or severe criticism is uncalled for he is then willing to make due apologies for having used such language in that or those particular instances."

But one construction can be placed on this answer, which is that the respondent admits using the language substantially as charged and claims that he was justified in so doing because the court had rendered decisions in other cases in which he was interested which were unsatisfactory to him and had shown such partiality against him that he might properly resort to this sort of language in order to win proper attention and consideration and that while all this was intentionally done it was not for the purpose of showing contempt for the court.

If the language confessedly used by an attorney and officer of this court in a petition for rehearing be such as to carry beyond question its own inherent and inevitable significance and character then the user must have intended the natural and probable consequences of his act in using such language. Particular attention is called to certain statements found in the quotations from the petition for rehearing set forth in the accusation:

"The court evidently is not parading this immaterial statement for any good purposes. . . . Those statements are libelous if they mean anything wrong."

*In re* Hanson.

"Now have you stated this fairly? If it does not insinuate anything wrong, why is it stated at all? If it does it is libelous, because it does not state enough of the record as it is to put it in the right light. Cut it out, or state it fully!"

"Does not that look like duplicity? Looking at it closely it appears that the preliminary hearing is meant, but it. was your duty to say: 'At this preliminary hearing.' "

"This court has been imposed on by counsel for defendant. This court has bitten so often on dope and extrinsic matter put out by opposite counsel that they are getting bold in the matter they put over."

"Why do you holler about her not getting this correct when none of the other witnesses, including the defendant, could place the time positively? Why do you expect so much more from her? Do you have a grudge against her that you point out her shortcomings all the time, even when they are immaterial?"

"Your statement is absolutely misleading and unfair."

"Does not this show malice by the court?"

"Your opinion is absolutely libelous on this matter, and you should be fair enough to grant a rehearing, correct these wrong impressions of facts, and decide this question in the new light."

"Your adding to the first sentence 'who was not guilty' is absurd and ambiguous. In the first syllabus you have intimated that this involved a question of a motive to obtain money wrongfully, and that is libelous."

"From your first syllabus one might infer that you insinuate that the record shows something wrong of that kind, and so far it is libelous. .And in so far as you hold it a defense without such a wrong it is absolutely ridiculous and not tenable."

"Further you do not meet our issue, and in fact dodge the real question."

"We think that the way you dispose of this is utterly frivolous; that, in one sense, it is only a method to dodge the real questions. But the most important trouble is that I fear that it will make Kansas law ridiculous not only in Kansas, but all over the United States. That they will give this the horse laugh all along this line."

"You are now introducing a rule that would serve no good purpose excepting to make it possible to introduce prejudicial matter that really has no probative effect or any pertinence to the real issue. , This is the limit! Lord protect us! Opportunity!"

"The disposing of error as you do shows malice upon its face by this court. Every lawyer in the state can read it between the lines. It is a sham at an error in judgment that ought to be too raw for this court to put over and be left to stand."

These are a few of the expressions contained in the charge and admitted by the respondent, and it must be held that they bear upon their faces plenary and satisfactory evidence that they were used not only with utter disregard of anything like

respect but with the plainest intent to express contempt and disrespect for the court to which they were addressed.

It is one of the plainest and most primary duties of an attorney to be respectful to the courts in which he practices. It was held in the case of *In re Pryor*, 18 Kan. 72, that—

"An attorney, as an officer of the court, is under special obligations to be considerate and respectful in his conduct and communications to the court, or judge." (Syl. ¶ 4.)

In the opinion it was said:

"We remark secondly, that an attorney is under special obligations to be considerate and respectful in his conduct and communications to a judge. He is an officer of the court, and it is therefore his duty to uphold its honor and dignity." (p. 74.)

By statute this court is given express power to disbar or suspend an attorney-at-law "for a willful violation of his oath, or of any duty imposed upon an attorney-at-law." (Laws 1913, ch. 64, § 2.)

(See, also, *The State v. Waugh*, 53 Kan. 688, 37 Pac. 165; *In re Hanson*, 80 Kan. 783, 105 Pac. 694; *Hanson v. Sward*, 92 Kan. 1, 140 Pac. 100; *In re Dunn*, 85 Neb. 606; 2 R. C. L. 1092; 6 R. C. L. 523.)

The motion, affidavit and application for citation for contempt in this matter were filed March 25, 1916. The respondent filed an answer to the citation April 7, and what he terms a plea to the jurisdiction May 1, a motion to strike July 6, a motion to make more definite and certain July 25, and his answer to the accusation August 5. He appeared in court in his own behalf at the October sitting, but in all this time no expression has come from him modifying in any way the terms of his answer already referred to.

In view of the circumstances and situation presented it is by the court ordered that the respondent, John F. Hanson, for his contempt as hereinbefore set forth, be and he is hereby suspended from practice as an attorney at law in any of the courts of this state until the further order of this court.